IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-4740

UNITED STATES OF AMERICA,

*Appellee*,

v.

ALIF JAN ADIL,

*Appellant*.

Appeal from the United States District Court
for the Eastern District of Virginia
at Alexandria
*The Honorable T.S. Ellis, III, Senior District Judge*

BRIEF OF THE UNITED STATES

Jessica D. Aber
United States Attorney

Nicholas J. Patterson
Assistant United States Attorney

Jacqueline R. Bechara
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

*Attorneys for the United States of America*

# Table of Contents

Page

Table of Authorities ............................................................................ iii

Introduction ........................................................................................1

Issue Presented ...................................................................................3

Statement of the Case..........................................................................4

    A.    MV and her family flee Afghanistan after the withdrawal of American troops. ......................................................................4

    B.    Defendant approaches MV at Camp Upshur and coerces her into recording a sexually explicit video of herself. ..............................5

    C.    Defendant touches MV's breasts and instructs her to lie about their encounter. ...................................................................6

    D.    The next day, MV reports the incident and military police arrest defendant. .....................................................................10

    E.    A grand jury indicts defendant on four counts....................................14

    F.    Before trial, defendant requests instructions requiring proof of his knowledge of MV's age for Counts 1 and 3, but not Count 2. ........................................................................14

    G.    Defendant proceeds to a jury trial. ......................................18

        1.   MV's father testifies to her age....................................18

        2.   The government offers expert testimony. .....................................19

        3.   The district court determines that only Count 3 requires proof of defendant's knowledge of MV's age.........................................22

        4.   The court instructs the jury. .........................................24

5. The jury convicts defendant of three counts. ................................25

Summary of Argument ........................................................................26

Argument.............................................................................................28

The district court properly instructed the jury on Count 2. ....................................28

A. Defendant waived the argument that Count 2 required proof of his knowledge of MV's age. ................................................................28

B. Alternatively, the district court did not plainly err in instructing the jury on Count 2.............................................................................32

1. The district court did not err. ........................................................33

a. The traditional tools of statutory interpretation establish that Virginia Code § 18.2-370(A) does not require proof of the defendant's knowledge of the child's age. ....................................35

b. Defendant's counterarguments are unavailing.............................38

2. Any error is not plain. .................................................................44

3. Any plain error did not affect defendant's substantial rights........45

4. The Court should decline to notice any plain error.......................49

Conclusion ..........................................................................................50

Statement Regarding Oral Argument ....................................................51

Certificate of Compliance ....................................................................51

# Table of Authorities

Page

## Cases

*Commonwealth v. Kilpatrick*, 876 S.E.2d 177 (Va. 2022) ........................................35

*Detzler v. Commonwealth*, No. 1779-08-4, 2010 WL 1286350
    (Va. Ct. App. Apr. 6, 2010) ............................................................35

*Dietz v. Commonwealth*, 804 S.E.2d 309 (Va. 2017) ...............................................36

*Doe v. Settle*, 24 F.4th 932 (4th Cir. 2022) ........................................ passim

*Flores-Figueroa v. United States*, 556 U.S. 646 (2009)..........................................43

*Greer v. United States*, 141 S. Ct. 2090 (2021)................................................ 33, 45

*Hix v. Commonwealth*, 619 S.E.2d 80 (Va. 2005) ................................................40

*Jama v. Immigr. & Customs Enf't*, 543 U.S. 335 (2005) ........................................37

*Kilpatrick v. Commonwealth*, 857 S.E.2d 163 (Va. Ct. App. 2021) .......... 35, 38, 39

*Miranda v. Arizona*, 384 U.S. 436 (1966) ............................................................12

*Rainey v. Commonwealth*, 193 S.E. 501 (Va. 1937) ..............................................38

*Sandoval v. Commonwealth*, 768 S.E.2d 709 (Va. Ct. App. 2015)........................40

*Turner v. Commonwealth*, 809 S.E.2d 679 (Va. 2018) ..........................................37

*United States v. Arrington*, 719 F.2d 701 (4th Cir. 1983) ......................................48

*United States v. Banker*, 876 F.3d 530 (4th Cir. 2017) ................................. passim

*United States v. Carthorne*, 726 F.3d 503 (4th Cir. 2013) .....................................44

*United States v. Cedelle*, 89 F.3d 181 (4th Cir. 1996)...........................................49

*United States v. Coté*, 504 F.3d 682 (7th Cir. 2007) .............................................42

*United States v. Daniels*, 685 F.3d 1237 (11th Cir. 2012) (per curiam)........... 41, 43

*United States v. Dennis*, 19 F.4th 656 (4th Cir. 2021).............................................4

*United States v. Engle*, 676 F.3d 405 (4th Cir. 2012).............................................40

*United States v. Fall*, 955 F.3d 363 (4th Cir. 2020) ..............................................46

*United States v. Farley*, 607 F.3d 1294 (11th Cir. 2010) ................................. 42, 44

*United States v. Hale*, 857 F.3d 158 (4th Cir. 2017) ....................................... 31, 32

*United States v. Hardy*, 999 F.3d 250 (4th Cir. 2021)................................................45

*United States v. Hicks*, 457 F.3d 838 (8th Cir. 2006)...................................... 42, 43

*United States v. Ivey*, 60 F.4th 99 (4th Cir. 2023) ......................................... 29, 31

*United States v. Keeter*, 130 F.3d 297 (7th Cir. 1997) ...................................29

*United States v. Lynn*, 592 F.3d 572 (4th Cir. 2010) ..................................33

*United States v. Miller*, 41 F.4th 302 (4th Cir. 2022)..................................... 33, 44

*United States v. Morehouse*, 34 F.4th 381 (4th Cir. 2022).................................31

*United States v. Olano*, 507 U.S. 725 (1993) ...................................... 29, 33, 44, 45

*United States v. Reid*, 523 F.3d 310 (4th Cir. 2008)....................................49

*United States v. Robinson*, 627 F.3d 941 (4th Cir. 2010)..................................49

*United States v. Robinson*, 744 F.3d 293 (4th Cir. 2014)........................... 28, 29, 32

*United States v. Rodriguez*, 311 F.3d 435 (1st Cir. 2002).................................29

*United States v. Santos*, 553 U.S. 507 (2008)........................................46

*United States v. Washington*, 743 F.3d 938 (4th Cir. 2014).......................... 36, 41

*Welch v. Commonwealth*, 628 S.E.2d 340 (Va. 2006) ..........................................48

*Wood v. Milyard*, 566 U.S. 463 (2012)...................................................31

**Statutes**

18 U.S.C. § 2422(b) ......................................................................... passim

18 U.S.C. § 2423(a) ............................................................................ 36, 41

Va. Code § 18.2-29 .............................................................................42

Va. Code § 18.2-63 ......................................................................... 24, 34, 48

Va. Code § 18.2-370(A).................................................................... passim

Va. Code § 18.2-374.3(C).......................................................... 36, 37, 39, 42

**Other Authorities**

Va. Model Jury Instructions Crim. No. 29.300 (Sept. 2023)...................................37

**Rules**

Fed. R. App. P. 25....................................................................................4

iv

Fed. R. Crim. P. 49.1.................................................................................4

## Introduction

Minor Victim ("MV"), an Afghan girl, fled her home country in the fall of 2021 after the United States withdrew its troops from Afghanistan and the Taliban regime toppled the Afghan government.[1] MV and her family temporarily resided at Camp Upshur, a training location on Marine Corps Base Quantico that had been repurposed to house Afghan refugees. MV was 14 years old at the time.

Defendant Alif Adil was also an Afghan refugee, and he repeatedly approached MV in the common areas at Camp Upshur. On one occasion, defendant happened to be in a park where MV was arguing with another man. Later, defendant, who was at least 10 years older than MV, approached MV and showed her a picture of her arguing with the man in the park. As MV later testified, in Afghanistan, taking such a picture of a girl can imperil her life. Defendant told MV she should be defendant's friend and eventually asked MV to make a sexually explicit video of herself. He told MV that, if she complied, he would delete the picture of MV arguing with the man in the park. MV followed defendant's instructions, went into the portable toilets at Camp Upshur, and

---

[1] Given the nature of the charges in this case and the potential harm to the minor victim and her family that could result from the disclosure of identifying information, the district court granted the government's motion to redact the minor victim's initials from the publicly-filed trial transcripts. *See* JA16 (ECF No. 146). Consistent with that order, and to protect the minor victim's privacy, the government refers to her as "MV" throughout this brief.

1

recorded the video he requested.

On the night of November 7, 2021, defendant approached MV and again showed her the picture of her arguing with the man in the park. MV tried to talk to defendant, but he grabbed her, pushed her onto a cot, put his hands inside her shirt, and touched her breasts. Defendant advised MV to tell anyone who asked that he was just giving her advice as her elder, and that if she did not comply, he would cause problems for her. When they heard someone approaching, defendant fled. That night, MV complied with defendant's instruction and did not admit what had happened.

But MV "was really scared," and she worried that "all [her] life" defendant would "be showing [her] that picture" and "bothering" her. JA481. The next day, she told her mother about the picture. After speaking with MV, the U.S. Marines on duty at Camp Upshur interviewed defendant, who admitted he had kissed MV and touched her breasts. Officers arrested defendant and seized his phone, from which they later recovered the sexually explicit video of MV and other images and videos depicting child pornography.

In August 2022, a jury found defendant guilty of one count of abusive sexual contact without force or threat, one count of coercion and enticement of a minor, and one count of possession of child pornography. The sole question presented in this appeal is whether the district court erred in instructing the jury on the coercion

and enticement count by failing to require proof that defendant knew MV was under the age of 15.

Because defendant repeatedly, explicitly told the district court he was not seeking a knowledge-of-age instruction on the coercion-and-enticement count, he waived this claim, and it is not reviewable on appeal. Alternatively, even if the Court reviews for plain error, defendant is not entitled to relief. Because neither 18 U.S.C. § 2422(b) nor Virginia Code § 18.2-370(A) requires proof of the defendant's knowledge of the victim's age, the district court did not err. Further, given that Virginia state courts have not resolved this issue, and this Court's only relevant decision refutes defendant's interpretation, any error is not plain. Finally, because the jury heard consistent testimony that MV looked and, in fact, was under the age of 15 at the time of these offenses, any error did not affect defendant's substantial rights. Therefore, the Court should affirm.

## Issue Presented

Did defendant waive the argument that the district court should have instructed the jury on Count 2 that it must find beyond a reasonable doubt that he knew MV was under the age of 15? Alternatively, did the district court plainly err in instructing the jury on Count 2?

**Statement of the Case**

A.    **MV and her family flee Afghanistan after the withdrawal of American troops.**

Viewed "in the light most favorable to the government, evidence adduced at trial established the following facts." *United States v. Dennis*, 19 F.4th 656, 660 (4th Cir. 2021). MV grew up in Afghanistan, where she went to school "[f]or a year." JA466. She did not learn to read or write, did not learn about dates or the calendar, and did not know her age. JA467. Her native language was Pashto. JA466. MV's father was also born in Afghanistan and his native language was also Pashto. JA372. He had a tenth-grade level of education and understood the western calendar. JA372. MV's father testified that she was born in 2006, which he knew because he "took [his] wife to the hospital" and "was there when [MV] was born." JA373.[2] At the hospital, "[t]he doctor pointed at the calendar and told [MV's father], 'Your daughter is born on this date, this year.'" JA374.

In 2021, after "the Taliban took over," MV and her family fled Afghanistan and came to the United States "for [their] own safety." JA467. At the time, MV was "[a]lmost 14 years old." JA382. MV and her family temporarily resided at

---

[2] MV's father testified to her full date of birth. *See* JA373. The month and day for all birth dates have been redacted throughout the trial transcripts, consistent with Federal Rule of Criminal Procedure 49.1(a)(2). Accordingly, this brief describes birth dates using only the relevant birth year. *See* Fed. R. App. P. 25(a)(5).

Camp Upshur, "a training location for reservist units of various branches" of the

U.S. military, located "on the western side of Marine Corps Base Quantico" in the

Eastern District of Virginia.  JA242.  Camp Upshur had been "repurposed" for

"Operation Allies Welcome," which "involved the housing and accommodation for

Afghan refugees coming over from Afghanistan in the wake of the withdrawal" of

American troops.  JA243.  As part of this operation, a dining hall, living tents, a

storage area, and portable toilets were added to Camp Upshur.  JA245, JA247–248.

"At its peak," Camp Upshur housed "about 5,000" Afghan refugees, with "several

hundred" people living in each tent.  JA249.

### B.    Defendant approaches MV at Camp Upshur and coerces her into recording a sexually explicit video of herself.

MV repeatedly encountered defendant in the common areas at Camp

Upshur.  One day, after using the bathroom, she saw defendant and "he was after"

her.  JA468.  The next time she saw defendant, she was "standing in line to get

food."  JA469.  Defendant was standing behind MV, and she asked her friends to

stand behind her while she went in front of them "[b]ecause [she] did not like this

guy."  JA469.  MV next encountered defendant while she was in the park.  JA469.

MV was arguing with a man who was sitting where MV and her friends wanted to

sit.  JA469–470.  Defendant was in the park but did not speak to MV.  JA470.

Sometime later, defendant showed MV a photograph of her arguing with the

man in the park.  JA470.  Defendant told MV, "You should become my friend,"

but MV did not want to be friends with defendant.  JA471.  She "felt so bad, and it affected [her]" to know that defendant had a photograph of her with the man in the park.  JA472.  She explained that "in Afghanistan, no one takes [a] picture of a girl."  JA472.  She added that a girl "may not live" if someone takes such a picture.  JA472.

Eventually, defendant asked MV "to make a video of [her] body, below [her] . . . belly button," with her clothes off.  JA475–476.  Specifically, defendant told MV "to make a video of [her] vagina" and "to enter [her] fingers inside."  JA476.  Defendant directed MV to go into the bathroom, where she recorded the video using his cell phone.  JA477.  He had promised that if she made the video, he would delete both the video and the picture of MV and the man in the park.  JA477.  She feared that, if she said no, defendant would "have created a lot of problems for [her]."  JA477.

### C. Defendant touches MV's breasts and instructs her to lie about their encounter.

At some point in the fall of 2021, the single male Afghan refugees, including defendant, moved from Camp Upshur to Pioneer Village, "a separate encampment that was set up down the road."  JA250; *see* JA472.  During this time, defendant and MV communicated over video and voice calls.  JA473.  MV used her father's phone to talk to defendant, and they continued talking for several weeks.  JA473, JA486.  MV asked about defendant's family, but defendant responded with "bad

6

talks," "[t]he kind of talk that a husband and wife talk about." JA474. MV explained that defendant was talking about sex and told her he wanted to have sex with her. JA474.

Eventually, the single male Afghan refugees returned from Pioneer Village to Camp Upshur. JA250. On the night of November 7, 2021, MV went for a walk with her friends and then went to the bathroom. JA478. When she left the bathroom, defendant "was standing there" and showed MV the photo of her arguing with the man in the park. JA478. MV "did not understand," and she resolved to "make him understand that [they could not] be friends." JA478. Defendant "was going towards a dark area, so [she] went after him to talk to him." JA478. When MV "went after him," defendant "grabbed" her and "started pulling [her] clothes." JA478. Defendant "dropped" MV on a cot and tried to pull her shirt over her head. JA479. He put his hands inside MV's shirt and touched her breasts under her clothes. JA479–480. MV "felt bad" and wondered what defendant was doing with her. JA479.

Eventually, they "saw a shadow," and MV "heard someone calling [her] name." JA480. Defendant told MV that, "if anyone asks," she should "tell them that [defendant] was [] trying to give [her] advice" and "guide [her] as an older person." JA480. Defendant "dropped a blanket on top of" MV, "covered [her] mouth with his hands," and told her that, "If you don't tell them what I told you,

then I'm going to create a lot of problems for you in the future." JA480.

Defendant left, and MV later learned that he had "escaped." JA480–481. When

MV spoke to the military police, she told them what defendant had instructed her

to say. JA481.

That night, Joshua Aiken, a Corporal in the U.S. Marine Corps, was on duty

at Camp Upshur. JA309. He recalled that "some women came up and they were

screaming" in a language he could not understand. JA310–311. The women

"pointed down an alleyway," and Corporal Aiken and another Marine ran down the

alleyway between two buildings. JA311. The Marines arrived at a reception

center, where "[t]here were a number of Afghan refugees in a heated discussion,"

JA311, and an interpreter "was going back and forth" with the refugees, JA312.

When Corporal Aiken "heard the word[s] 'sexual assault' in English," he

"immediately called over the radio." JA312. The interpreter "gathered that the

man who was the alleged assaulter had jumped the fence and ran into the woods."

JA312.

Parker Cardon, a military police officer in the U.S. Marine Corps, heard the

radio call and responded to the location of the incident. JA296. Officer Cardon

recalled that MV had "tears in her eyes" and "appeared to be upset." JA298. He

estimated that MV was "anywhere from probably 12 to 14 years old." JA298.

While Officer Cardon was talking to MV, MV's mother arrived, and "[s]he

8

appeared to be angry, frustrated, [and] mad towards her daughter." JA298–299.

Officer Cardon observed that MV's mother "was yelling," and MV was "yelling"

and "crying." JA299. Corporal Aiken testified that MV "seemed like she was in

defense of the accused." JA314. While they were arguing, MV's mother

"smacked her daughter." JA302.

Meanwhile, Jose Fonseca, a Lance Corporal in the U.S. Marine Corps,

received a notification that an individual had "jumped over a fence and into the

forest," fleeing Camp Upshur. JA280. Corporal Fonseca and two other Marines

drove to the location and encountered defendant "along th[e] tree line that led to

the forest." JA280–281. Defendant "was wearing a T-shirt, sweat pants, [and]

sandals." JA281. After questioning defendant, Corporal Fonseca allowed

defendant to sit in the back of his patrol car because defendant was cold. JA284.

A few minutes later, a group of women arrived, and "one older woman opened the

door" to the patrol car and had a "verbal exchange" with defendant. JA284. The

woman appeared "[i]rritated," while defendant appeared "calm." JA285.

Corporal Fonseca drove "about 15 seconds" and brought defendant to the

reception center. JA285, JA313. Corporal Fonseca removed defendant from the

patrol car, while a second Marine spoke to the group of women. JA285.

Eventually, Corporal Fonseca let defendant return to the car because he was cold.

JA286. At that point, MV "attempted to have an exchange" with defendant.

JA286.  She retrieved a jacket for him because "he looked very cold."  JA313.

Corporal Fonseca observed that the girl was in her "[y]ounger teenage years, 13,

14, maybe 15," JA286, and she looked "[w]orried," JA289.  Both Corporal

Fonseca, through a translator, and defendant asked the girl to leave, and she

complied.  JA286.

After they "communicated with all parties involved and everyone was kind

of on the same page saying that nothing had really happened," the Marines "talked

to the mom and the daughter one last time" and "assured them" they could contact

the security forces or the military police if there were any further incidents.

JA301.

### D.    The next day, MV reports the incident and military police arrest defendant.

On November 8, 2021, the day after her encounter with defendant, MV told

her mother "that this guy took [her] picture and then he created a problem for

[her]."  JA481.  MV decided to report the incident because "the night before, [she]

was really scared," and she worried that "all [her] life" defendant would "be

showing [her] that picture" and "bothering" her.  JA481.

That evening, "[a] few people" alerted Ahmad Harrif, an Immigration and

Customs Enforcement officer who was fluent in Pashto, that there was "a young

lady in distress in one of the tents."  JA325.  He went to the tent and found MV,

"who was very sad and crying that there was a guy who was blackmailing her with

a picture on his phone." JA325. He observed that MV was about 14 years old.

JA327. Agent Harrif then informed Daniel Cliff, a First Lieutenant in the U.S.

Marine Corps, about the situation with MV. JA252, JA326. Agent Harrif,

Lieutenant Cliff, and another officer took MV to the medical suite, where they

asked her what had happened. JA326. Lieutenant Cliff testified that "[t]he nature

of the allegation was that it was sexual and it was an unwanted contact." JA253.

He observed MV and recalled that "[s]he was definitely younger." JA255.

Lieutenant Cliff added, "If I had to guess, I would have put her somewhere in the

mid teens. She had acne on her face, which was consistent with a teenager."

JA255. During the interview, MV "was very sad, almost crying, and could barely

speak." JA327. At the end of the interview, MV was transported to a local

hospital "for further treatment and evaluation." JA255.

Lieutenant Cliff and Agent Harrif found defendant in the tent where he was

living. JA255–256, JA328. To confirm his identity, defendant produced his

identification papers, which indicated that he was born in 1997. JA328. Agent

Harrif observed that there were "crowds forming" in the tent because of the police

presence, so he asked defendant if he "wanted to come talk to [them] separately,

away from the crowd." JA329. Defendant agreed to speak with the officers, and

they walked toward the Marines' recreation room. JA258. On the way, they

passed by MV's father, who "charged at" defendant. JA330. MV's father "was

very angry and yelling at [defendant] in Pashto." JA330.

In the recreation room, Lieutenant Cliff asked defendant questions while Agent Harrif translated. JA259, JA331. A second Marine read defendant his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), "line by line." JA261. Agent Harrif translated the *Miranda* warnings into Pashto and confirmed that defendant understood. JA332. Defendant "indicated that he was roughly 25 years old" at the time. JA263.[3]

Because Agent Harrif was not a Department of Defense ("DoD")-certified Pashto interpreter, Lieutenant Cliff asked for an interpreter with the requisite certification to attend the interview. JA264. Ahmad Sidique, a lead communications specialist for the Department of Homeland Security and a DOD-certified interpreter, responded to the radio call and took over interpreting from Agent Harrif. JA333–334, JA351, JA355. The Marine who had previously administered the *Miranda* warnings then read defendant his *Miranda* rights a second time. JA265. Sidique translated the warnings for defendant and confirmed

---

[3] The testimony about defendant's age was inconsistent. Defendant's immigration file indicated his birth date was in 1997. JA674–675. Yet defendant's Afghan citizenship document indicated that he was "approximately 19 years of age in between March and December of 2012 and January and March of 2013." JA699. The document did not list his actual birth date. JA699. In any event, all the evidence showed that defendant was somewhere between the ages of 24 and 28 at the time of these offenses.

12

that he understood.  JA356–358.

Lieutenant Cliff asked defendant if he had "taken any pictures of the girl, and he said he ha[d] not."  JA359.  Defendant added, "If you don't believe me, I can show you my phone."  JA359.  Defendant pulled his phone out of his pocket, unlocked it, and gave it to the officers to review.  JA266.  After looking "very briefly," Lieutenant Cliff did not find the photo of MV and the man in the park. JA266.  Defendant opened the photo gallery for Sidique and went "picture by picture," JA359, "to show that he ha[d] not taken any picture" of MV, JA360.

Next, the officers asked defendant if he had "done anything" to MV, and he said, "yes, he has been holding her hand, looked a lot into her eyes, kissed her, and touched her breast."  JA361.  Defendant stated that he had a relationship with MV and that it was consensual.  JA341, JA362.  He used the word "mulgara," which means "boyfriend-girlfriend in that context."  JA341.

At the end of the interview, Agent Harrif advised defendant that he "might go to jail for [his] crimes" and that "it might affect [his] status."  JA336. Defendant responded, "Yeah, I'll do whatever time the courts give me," and "guilty as charged."  JA336.  After defendant admitted that he did some of the things he was accused of, the Marines placed defendant under arrest and took his phone into evidence.  JA267, JA318.  Sidique testified that, before defendant was transported, "he made a statement that even, 'If I go to prison or jail for 50 years, I

13

don't care.  This is love.'"  JA361–362.

### E.    A grand jury indicts defendant on four counts.

In February 2022, a grand jury sitting in Alexandria, Virginia, returned a superseding indictment charging defendant with four counts.  Count 1 charged defendant with abusive sexual contact, in violation of 18 U.S.C. §§ 2244(a)(5) and (7)(3).  JA18–19.  Count 2 charged defendant with coercing and enticing MV "to engage in sexual activity for which a person can be charged with a criminal offense, namely: taking indecent liberties with children, in violation of Virginia Code § 18.2-370," all in violation of 18 U.S.C. § 2422(b).  JA20.  Count 3 charged defendant with attempting to coerce and entice MV "to engage in sexual activity for which a person can be charged with a criminal offense, namely: carnal knowledge of a child between thirteen and fifteen years of age, in violation of Virginia Code § 18.2-63," all in violation of § 2422(b).  JA21.  Count 4 charged defendant with possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(A) and (b)(2).  JA22.

### F.    Before trial, defendant requests instructions requiring proof of his knowledge of MV's age for Counts 1 and 3, but not Count 2.

Before trial, both parties filed proposed jury instructions.  For Count 1, defendant requested an instruction that the government "must prove beyond a reasonable doubt that the defendant knew that [MV] was at least 12 years old but

14

not yet 16 years old at the time" of the acts alleged in the indictment, JA62, and

that he "knew that [MV] was at least 4 years younger than him at the time," JA63.

Similarly, for Count 3, defendant requested an instruction that "the government

must prove beyond a reasonable doubt [] that the defendant knew or believed [MV]

to be at least 13 years old but younger than 15 years old."  JA77.  For Count 2,

defendant requested an instruction that the government must prove beyond a

reasonable doubt that MV "was under the age of 15."  JA70.  But defendant did not

request an instruction requiring proof that he knew MV's age.

     Defendant's objections to the government's initial proposed jury instructions

tracked his proposed instructions.  He objected to the government's proposed

instruction on the elements of Count 1 because it omitted "the requirement that the

defendant knew [MV's] age." JA82.  Similarly, he objected to the government's

proposed instruction on the elements of Count 3 because it omitted the requirement

that defendant "had to have known or believed [MV] to be" over the age of 12 but

under the age of 15.  JA84.  With respect to the government's proposed instruction

on the elements of Count 2, defendant objected to the failure to require proof that

MV was under the age of 15, but did not object to the failure to require proof that

defendant knew MV's age.  JA83–84.

     At the pretrial conference, the district court offered a preliminary assessment

of the knowledge-of-age requirement for Counts 1, 2, and 3.  First, the court

indicated that it disagreed with the position that Count 1 required proof of

defendant's knowledge of MV's age.  JA121–122.  Second, the court observed that

Count 2 did not require proof of defendant's knowledge of MV's age.  JA122–124.

Third, regarding Count 3, the court noted that other circuits required proof of the

defendant's knowledge of the victim's age for an attempted violation of § 2422(b).

JA124.  The court indicated that it would hear argument on the knowledge-of-age

requirement at a motions hearing the following week.  JA124–125.

Defense counsel then informed the court, "Just to narrow the issue, we are

not taking the position that for Count 2, knowledge of age, of her age, is required,

only that the age must be proven."  JA125.  The district court agreed that MV's age

"must be proven" and defendant's "knowledge of it doesn't matter."  JA125.

Defense counsel confirmed, "That is as we have outlined in our jury instructions.

So I think that is not at issue."  JA125.  The court inquired, "But you're saying he

has to know?," to which defense counsel responded, "[n]ot for Count 2."  JA126.

Defense counsel indicated she would present argument on Count 1 at the upcoming

hearing, but "just wanted to clarify, as to Count 2, that we don't believe there's an

issue there."  JA126.

Three days later, the parties revisited the knowledge-of-age requirement at a

motions hearing.  The district court observed that one issue was "the government's

burden to prove the age of the alleged victim" and questioned "whether there really

16

is a difference of opinion anymore." JA147. The court indicated that it did not believe there was "a requirement that the government prove that the defendant knew her age for either of Count 1 or Count 2, but it does have to prove it for an attempt," as charged in Count 3. JA148. Defense counsel agreed, stating, "For Count 2, we are not asserting that the government needs to prove that Mr. Adil knew her age. We are, however, asserting that they have to prove that she was the age that would trigger the underlying Virginia statute." JA148. The court agreed with defense counsel and confirmed that the government understood that it had to prove MV's age but did not have to prove defendant's knowledge of her age. JA149.

After considering an unrelated motion, the court revisited the knowledge-of-age issue later in the hearing. The court inquired, "Now, I think the parties are in agreement that on coercion and enticement of a minor, the government is not required to prove beyond a reasonable doubt that the defendant knew the age of the alleged victim. Is that right?" JA157. Defense counsel responded, "Yes, Your Honor." JA157. Turning to Count 1, the court rejected defendant's proposed interpretation, reasoning that "the statutory language clearly compels the conclusion that a defendant need only knowingly engage in a sexual act, but need not know the victim's age to sustain a conviction." JA160. As for Count 3, the court agreed with defendant that the government was required to prove defendant's

knowledge of MV's age because attempted coercion and enticement of a minor "is a specific intent offense." JA162. After ruling, the court asked whether defense counsel had any objection: "But I do think you object to the other—I'm not sure you objected to Count 1 or Count—you did to Count 1, but not Count 2?" JA163. Defense counsel confirmed, "Your Honor, yes. We do object to the reading—the Court's ruling on Count 1." JA163. The court nonetheless indicated that it had not "ruled finally on any instruction" and would not do so until "after all the evidence is in." JA167.

## G. Defendant proceeds to a jury trial.

### 1. MV's father testifies to her age.

In August 2022, defendant proceeded to a jury trial. In addition to the testimony summarized *supra*, the government introduced into evidence a photograph of the vaccination card MV's father received at the hospital a few hours after MV was born. JA376, JA387. MV's father testified that the 2006 date listed on MV's vaccination card was "her birth date." JA377. The government also introduced a photograph of an American ID card MV received on September 25, 2021. JA380, JA382. The American ID card listed a date of birth for MV in 2007. JA380. MV's father explained that, when his family fled Afghanistan and arrived at the American Embassy in Abu Dhabi, MV's vaccination card was in their luggage, which had been "left behind." JA381. At the time, MV's father

knew that she was "[a]lmost 14 years old" but could not remember her exact date

of birth.  JA381–382.  As a result, the date of birth listed on her American ID card

"was issued based on her appearance."  JA381.  The district court clarified that

both the 2006 birth date listed on the vaccination card and the 2007 birth date listed

on the American ID card meant that MV was "under 15 years old at the time of this

event."  JA400.

      During defense counsel's cross-examination of MV's father, the government

objected to a question about whether MV's father told defendant MV's age.  *See*

JA393–394.  The district court observed that "this is probably going to trigger at

some point the Court's instructions to the jury on whether—certainly age must be

proved, but the knowledge for Counts 1 and 2, the knowledge of Mr. Adil need not

be shown.  Am I correct?"  JA394.  Defense counsel responded, "As the Court

knows, we disagree with the legal interpretation on Count 1.  We agree with

respect to Count 2."  JA394.

### 2. The government offers expert testimony.

      The government also called several expert witnesses during its case-in-chief.

Andrea Haick, a forensic nurse examiner, testified as an expert on forensic

assessment of victims of sexual assault.  JA401.  She examined MV on the night of

November 8, 2021, JA405, and listed MV's age as 14 years old "based off of her

date of birth and also what [Haick] was informed of," JA408.  Haick examined

MV's breasts and, based on the Tanner staging system for "determin[ing] where a patient is along the developmental curve," JA410, concluded that MV's breasts were consistent with those of a patient between the ages of 11 and 14, JA411. Haick added that a patient's breasts are a "good indicator" of her age.  JA412.

Additionally, Dr. Shannon Wolf, a professor and licensed counselor, testified as an expert in the psychological effects of trauma in minors.  JA554. Based on her experience and training, Dr. Wolf stated that less educated people and younger children are more susceptible to sexual coercion.  JA562–563.  She testified that when children experience sexual trauma, they "have a hard time verbalizing . . . what they've experienced" and "they just want to know they're not in trouble."  JA559.  Further, "[c]hildren who have no education . . . tend to be hyper-focused on one possible solution or one possible avenue out of the trouble, and sometimes it's very fanciful."  JA561.  Dr. Wolf added that if a child's family "is highly punitive and pushes the child away from them, . . . then that child is less likely to come to them should something traumatic happen."  JA561–562.

Dr. Wolf described that one acute stress response to trauma is "submission, where the person will be overly compliant with the threat; where they hope that the threat will go on by and not bother them."  JA558.  She also testified that a trauma bond is a "defense mechanism" involving "a strong attachment of a victim to a perpetrator."  JA565.  Evidence of a trauma bond includes "the victim trying to

20

protect the perpetrator, [] the victim taking blame for something to keep the perpetrator from having any consequences; [and] offering comfort to the perpetrator." JA565. Additionally, Dr. Wolf indicated that it is common for a child's story of sexual trauma to develop over time. JA570. She explained that "most children blame themselves for being victims, so they think they're at fault for that happening." JA571. Consequently, a child will "save the very, very worst for the last thing they tell you." JA571.

The government also called Jeffrey Ralston, a digital forensic examiner employed by the Federal Bureau of Investigation ("FBI"), who testified as an expert in mobile device analysis. JA579. Ralston examined the contents of defendant's phone and found an encrypted application called Gallery Vault, which "require[d] an additional PIN code" to access. JA588, JA590–591. In the active files of the Gallery Vault application, Ralston located the video of MV, which the government introduced into evidence and played for the jury. JA592–593, JA607, JA611. The metadata indicated the video was created on September 29, 2021. JA607. In the cache directory of the Gallery Vault application, Ralston located a series of photographs created between October 10–29, 2021, which were screenshots of defendant's video calls with MV. JA595–596, JA610–611. Ralston explained that a cache file indicates that an active file previously existed but had been deleted. JA597, JA610.

Ralston located additional files in "a user-created folder on the SD card." JA597.  He found five videos, which the government introduced into evidence and played for the jury.  JA598, JA600.  One of the videos was labeled "spoiledvirgins.com."  JA600.  These videos were located in sub-folders labeled in a different language.  JA602–603, JA604.  Behzad Raufi, a language specialist and FBI-certified Pashto interpreter, translated the file paths into English.  One folder was labeled "Naughty Pictures," and a second folder was labeled "Sexy."  JA694–JA696.

### 3. The district court determines that only Count 3 requires proof of defendant's knowledge of MV's age.

During the instructions conference, the parties discussed at length the extent to which the government must prove defendant's knowledge of MV's age as an element of Counts 1, 2, or 3.  JA756–757, JA779–783.  Defendant noted his "objection to the lack of the knowledge of age requirement for Count 1."  JA782.  Counsel reiterated this argument applied "[o]nly for Count 1."  JA783.  Defendant raised no objection with respect to the elements of Count 2.

After the conference, the district court issued a written order "to memorialize and elucidate [its] rulings regarding" the knowledge-of-age requirement.  JA844.  First, the court ruled that, to sustain a conviction on Count 1 for a violation of 18 U.S.C. § 2244(a)(5), the government had to prove that MV "had attained the age of twelve years but had not attained the age of sixteen years,

22

but need not prove that Defendant knew [her] age." JA851.

Second, the court determined that, to sustain a conviction on Count 2 for a violation of 18 U.S.C. § 2422(b), the government had to prove that MV "was under the age of fifteen, but need not prove that Defendant knew [her] age." JA851. The court specifically noted that "[t]he parties agree[d] that Count [2] does not require proof of the Defendant's knowledge of [MV's] age." JA849 n.2. Moreover, the district court reasoned that this Court "has clearly held that the jury is not required to find that a defendant 'had actual knowledge that [the victim] was a minor for purposes of a conviction under § 2422(b).'" JA847–848 (quoting *United States v. Banker*, 876 F.3d 530, 536 (4th Cir. 2017)). This was "not the end of the analysis," however, because the government alleged that defendant's conduct also violated Virginia Code § 18.2-370. JA848. The court noted that "Virginia's state courts have not decisively resolved the question of whether a conviction under Va. Code § 18.2-370 requires proof that a defendant knew the age of the victim," but this Court had interpreted the statute not to "require such knowledge." JA848 (citing *Doe v. Settle*, 24 F.4th 932, 942 (4th Cir. 2022)). The court cited this Court's reasoning that "where sexual crimes involve . . . physical contact with a minor, a defendant's knowledge of the victim's age need not be shown in order to prove the defendant's guilt." JA848 (quoting *Settle*, 24 F.4th at 942).

Third, the court determined that, to sustain a conviction on Count 3 for an

attempted violation of § 2422(b), the government had to prove "both" that MV "was thirteen years of age or older but under fifteen years of age, and that Defendant knew or reasonably believed that [she] fell within that age range." JA851. The court reasoned that Count 3 alleged that defendant's conduct was an attempted violation of Virginia Code § 18.2-63, which "penalizes any individual who 'carnally knows, without the use of force, a child thirteen years of age or older but under fifteen years of age.'" JA849 (quoting Va. Code § 18.2-63(A)). The district court acknowledged that § 18.2-63 "does not require proof that Defendant knew the age of the victim." JA849. But the court distinguished Count 3 because it charged an attempted violation of § 2422(b). JA849. "[B]ecause the 'attempt offense puts the defendant's knowledge at issue in a different way than the completed offense,'" the court reasoned, the government was required to prove that defendant "believed that [MV] was at least thirteen years of age but less than fifteen." JA850 (citing *Banker*, 876 F.3d at 539). Defendant did not challenge the court's written order.

### 4.    The court instructs the jury.

The next day, the district court instructed the jury. On Count 1, the court instructed that, if the jury found defendant not guilty of abusive sexual contact by force or threat, it should consider the lesser-included offense of abusive sexual contact without force or threat. JA874.

24

On Count 2, the court instructed that the government was required to prove the following elements beyond a reasonable doubt:

> First, that the defendant, within the Eastern District of Virginia, and within the maritime and territorial jurisdiction of the United States; two, knowingly persuaded, induced, enticed, or coerced; three, an individual who is younger than 18 years of age; four, to engage in any sexual activity—namely, taking indecent liberties with children, in violation of Virginia law. Specifically, that the defendant knowingly and intentionally proposed that MV, who was under the age of 15, expose her sexual or genital parts to the defendant; and, two, that the defendant acted with lascivious intent; and, three, that the defendant was 18 or older at the time.

JA877–878. Defendant did not object to this instruction.

After instructing the jury, the district court asked the parties, "Have I fully and fairly instructed the jury in accordance with the rulings made during the instructions conference?" JA890. Defense counsel responded, "Yes, Your Honor." JA891.

### 5. The jury convicts defendant of three counts.

Ultimately, the jury found defendant guilty of the lesser-included offense of abusive sexual contact without force or threat on Count 1, guilty on Counts 2 and 4, and not guilty on Count 3. JA898; *see* JA908–909. The district court sentenced defendant to a total of 150 months' imprisonment, consisting of 24 months on Count 1, 150 months on Count 2, and 120 months on Count 4, all to run concurrently. JA911. The court entered final judgment on December 9, 2022, and defendant filed a timely notice of appeal. JA917.

25

## Summary of Argument

The district court correctly instructed the jury that, to find defendant guilty on Count 2, the government had to prove beyond a reasonable doubt that MV was under the age of 15.  Because Count 2 did not require proof that defendant knew MV was under the age of 15, the Court should affirm his conviction.

In the district court, defendant raised the question whether the court had to instruct the jury that Counts 1, 2, or 3 required proof of his knowledge of MV's age.  At the pretrial conference, at the motions hearing, during trial, and during the instructions conference, defendant repeatedly, explicitly informed the district court that he was not requesting a knowledge-of-age instruction on Count 2.  Because defendant identified the knowledge-of-age issue, then explicitly withdrew the argument on Count 2, he has waived the present claim of instructional error, and it is not reviewable on appeal.

 Alternatively, even if the Court reviews for plain error, defendant has not established he is entitled to relief.  First, the district court did not err in instructing the jury on Count 2.  A completed offense under 18 U.S.C. § 2422(b) does not require the jury to find beyond a reasonable doubt that the defendant knew the victim was under the age of 18.  *See United States v. Banker*, 876 F.3d 530, 537–38 (4th Cir. 2017).  The state-law crime identified in Count 2, taking indecent liberties with children, in violation of Virginia Code § 18.2-370(A), also does not

require proof of the defendant's knowledge that the child was under the age of 15, the threshold for that statute. *See Doe v. Settle*, 24 F.4th 932, 942 (4th Cir. 2022). Based on the plain language of § 18.2-370(A), the adverbial phrase "knowingly and intentionally" modifies the verb "commits," not the prepositional phrase "with any child under the age of 15 years." Further, other Virginia criminal statutes demonstrate that the Virginia General Assembly knows how to require proof of the defendant's knowledge of the victim's age as an element of a crime against a child, but chose not to impose such a requirement in § 18.2-370(A). Moreover, the Virginia Model Jury Instructions for § 18.2-370 do not require the trial court to instruct the jury that it must find the defendant knew the child was under the age of 15. Defendant's arguments to the contrary do not undermine the plain meaning of the statute.

Second, because Virginia state courts have never resolved this question, and this Court's only precedent rejects defendant's interpretation of § 18.2-370(A), any error is not plain.

Third, any plain error did not affect defendant's substantial rights given the undisputed fact that MV was actually 14 years old at the time of the offenses, the consistent testimony that MV looked like she was under the age of 15 at the time of the offenses, and the circumstantial evidence tending to show defendant knew she was under the age of 15. Defendant cannot show that there is a reasonable

27

probability he would have been acquitted on Count 2 if the district court had

instructed the jury that it must find he knew MV was under the age of 15.

Finally, even if the Court concludes that the district court plainly erred and

such error affected defendant's substantial rights, it should decline to notice any

error here.

## Argument

## The district court properly instructed the jury on Count 2.

The sole issue on appeal is whether the district court erroneously instructed

the jury on Count 2 by failing to require the jury to find beyond a reasonable doubt

that defendant knew MV was under the age of 15. Because defendant identified

the knowledge-of-age issue and repeatedly, expressly abandoned any argument

that Count 2 required proof of his knowledge of MV's age, he waived this claim,

and it is not reviewable on appeal. Alternatively, even if defendant merely

forfeited his claim, he has not satisfied the stringent requirements of plain-error

review.

### A.     Defendant waived the argument that Count 2 required proof of his knowledge of MV's age.

Defendant concedes that he "did not object to the district court's instructions

on Count 2" and asks this Court to review his challenge for plain error. Def. Br.

11. To be sure, "[c]ourts may review a forfeited claim for plain error." *United

States v. Robinson*, 744 F.3d 293, 298 (4th Cir. 2014). But this case "is one of

waiver, not forfeiture." *Id.* "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted). This Court has recognized that "[a] party who identifies an issue, and then explicitly withdraws it, has waived the issue." *Robinson*, 744 F.3d at 298 (quoting *United States v. Rodriguez*, 311 F.3d 435, 437 (1st Cir. 2002)). "And 'when a claim is waived, it is not reviewable on appeal, even for plain error.'" *United States v. Ivey*, 60 F.4th 99, 115–16 (4th Cir. 2023) (quoting *Robinson*, 744 F.3d at 298). "Rather, a valid waiver means that there was 'no error at all.'" *Robinson*, 744 F.3d at 298 (quoting *United States v. Keeter*, 130 F.3d 297, 300 (7th Cir. 1997)).

Before trial, defendant raised the issue as to how the district court should instruct the jury on his knowledge of MV's age in his proposed jury instructions, JA62–63, JA77, and in his objections to the government's proposed jury instructions, JA82, JA84. Neither his proposed instruction on the elements of Count 2, JA70, nor his objection to the government's proposed instruction on that count, JA83–84, requested an instruction requiring proof of his knowledge of MV's age. Defendant then repeatedly, explicitly withdrew the issue from the district court's consideration at the pretrial conference. *See* JA125 ("Just to narrow the issue, we are not taking the position that for Count 2, knowledge of age, of her

age, is required, only that the age must be proven."); JA126 (counsel responding to the court's question whether defendant was "saying he has to know?," "[n]ot for Count 2"); JA126 (counsel stating she "just wanted to clarify, as to Count 2, that we don't believe there's an issue there"). At the motions hearing, defendant again explicitly withdrew any argument that Count 2 required proof of his knowledge of MV's age. *See* JA148 ("For Count 2, we are not asserting that the government needs to prove that Mr. Adil knew her age."); JA157 (defense counsel confirming the parties' agreement that Count 2 did not require proof that defendant knew MV's age); JA163 (confirming that defendant objected to the court's knowledge-of-age ruling on Count 1 but not on Count 2).

To be sure, the district court stated at the end of the motions hearing that it had not "ruled finally on any instruction" and would not do so until "after all the evidence is in." JA167. But defendant explicitly withdrew the knowledge-of-age argument for Count 2 again at trial. During a sidebar conference, the court observed that the government's objection to a line of questioning would likely implicate "the Court's instructions to the jury on whether—certainly age must be proved, but the knowledge for Counts 1 and 2, the knowledge of Mr. Adil need not be shown. Am I correct?" JA394. Defense counsel responded, "As the Court knows, we disagree with the legal interpretation on Count 1. We agree with respect to Count 2." JA394. During the instructions conference, defendant

30

reiterated that he objected to the lack of a knowledge-of-age requirement "[o]nly

for Count 1." JA783. The district court specifically relied on defendant's waiver

in its written ruling on the issue, stating that "[t]he parties agree that Count [2]

does not require proof of the Defendant's knowledge of [MV's] age." JA849 n.2.

Defendant did not object to this ruling and did not object to the instructions on

Count 2 after the court charged the jury. *See* JA890–891.

By repeatedly, expressly informing the district court that he was not arguing

that Count 2 required proof of his knowledge of MV's age, defendant waived the

present claim of instructional error. *See, e.g.*, *United States v. Hale*, 857 F.3d 158,

170 (4th Cir. 2017) (holding that the defendant "waived any objection to the form

of the willful blindness instruction" by stating "affirmatively to the court that he

ha[d] *no problem* with the form of the proposed instruction"); *see also Wood v.

Milyard*, 566 U.S. 463, 474 (2012) (holding that the State waived any timeliness

defense where "the State was well aware of the statute of limitations defense

available to it" but "twice informed the District Court" that it would not challenge

the timeliness of the habeas petition); *Ivey*, 60 F.4th at 115 (holding that the

defendant waived his claim that the district court erred by excluding his proffered

expert "by withdrawing the expert as a witness before the district court made a

final ruling to exclude the testimony"); *United States v. Morehouse*, 34 F.4th 381,

395 (4th Cir. 2022) (holding that the defendant waived his challenge to a sentence

enhancement by "repeatedly and explicitly" stating in his sentencing position paper that he was withdrawing his objection to the enhancement); *Robinson*, 744 F.3d at 298 (holding that the defendant waived his objection to the drug quantity calculation in the PSR when "he made the conscious choice at sentencing to proceed on the basis of the information contained in the PSR" and "adhered to this position when the district court gave him an opportunity to change his mind").

The district court asked defendant at least five times before it instructed the jury whether he was arguing that Count 2 required proof of his knowledge of MV's age. *See, e.g.*, JA126, JA148, JA157, JA163, JA394. If he had requested such an instruction, the district court could have instructed the jury accordingly. *Cf. Hale*, 857 F.3d at 170 ("Had [the defendant] objected to the instruction's language when the district court specifically asked for his views, the court could have amended the instruction."). "Having made a choice at [trial, defendant] cannot now contend that the district court erred by honoring that choice." *Robinson*, 744 F.3d at 299. Because defendant waived any argument that the district court had to instruct the jury that Count 2 required proof of his knowledge of MV's age, this claim is "not reviewable on appeal." *Id.* at 298.

**B.    Alternatively, the district court did not plainly err in instructing the jury on Count 2.**

Even if the Court determines that defendant forfeited, rather than waived, his claim of instructional error, he cannot prevail on plain-error review. "To establish

32

plain error," defendant "must show that an error (1) was made, (2) is plain . . . , and (3) affects substantial rights." *United States v. Miller*, 41 F.4th 302, 310 (4th Cir. 2022) (quoting *United States v. Lynn*, 592 F.3d 572, 577 (4th Cir. 2010)).  If defendant "makes this three-part showing," this Court "may exercise its discretion to correct the error only if it seriously affects the fairness, integrity[,] or public reputation of judicial proceedings." *Id.* at 311 (quoting *Lynn*, 592 F.3d at 577). Defendant "has the burden of establishing each of the four requirements for plain-error relief," and doing so "is difficult." *Greer v. United States*, 141 S. Ct. 2090, 2097 (2021) (internal quotation marks omitted).  Because defendant cannot satisfy any of these requirements, the Court should affirm.

## 1.     The district court did not err.

First, the district court did not err in instructing the jury on the elements of Count 2.  An error occurs "[i]f a legal rule was violated during the district court proceedings, and if the defendant did not waive the rule.'" *Miller*, 41 F.4th at 310–11 (quoting *Olano*, 507 U.S. at 733–34).  Because the jury instructions correctly stated the elements of Count 2, the district court did not err.

Count 2 charged defendant with coercing and enticing MV "to engage in sexual activity for which a person can be charged with a criminal offense, namely: taking indecent liberties with children, in violation of Virginia Code § 18.2-370," all in violation of 18 U.S.C. § 2422(b).  JA20.  As the district court correctly

33

recognized, JA847–848, this Court has squarely held that a conviction for coercing and enticing a minor under § 2422(b) does not require the jury to find that the defendant knew the victim was under the age of 18. *United States v. Banker*, 876 F.3d 530, 537–38 (4th Cir. 2017). But because Count 2 further alleged that defendant's conduct violated Virginia Code § 18.2-370, defendant contends that Virginia law required the jury to find beyond a reasonable doubt that he knew MV was under the age of 15.

As relevant here, Virginia's indecent-liberties statute provides that

Any person 18 years of age or over, who, with lascivious intent, knowingly and intentionally commits any of the following acts with any child under the age of 15 years is guilty of a Class 5 felony:

(1) Expose his or her sexual or genital parts to any child to whom such person is not legally married or propose that any such child expose his or her sexual or genital parts to such person . . . .

Va. Code § 18.2-370(A).

Virginia state courts have not addressed whether § 18.2-370(A) requires proof of the defendant's knowledge that the child was under the age of 15. The district court, JA848–849, relied on this Court's decision in *Doe v. Settle*, 24 F.4th 932, 939 (4th Cir. 2022), where the Court considered whether a person convicted of indecent liberties with children under Virginia Code § 18.2-370(A) could state an equal-protection claim by establishing that he was similarly situated to a person convicted of carnal knowledge under Virginia Code § 18.2-63. Addressing

34

whether there are "differences in the mental states of these crimes," the Court

acknowledged that "there is some unpublished Virginia caselaw that suggests that,

unlike carnal knowledge, indecent liberties may require knowledge of the victim's

age." *Id.* at 942 (citing *Detzler v. Commonwealth*, No. 1779-08-4, 2010 WL

1286350, at *3 (Va. Ct. App. Apr. 6, 2010)).  But the Court concluded that "the

better reading of how Virginia interprets its own law is that neither crime requires

knowledge of the age of the victim." *Id.*  The Court reasoned that "[w]here sexual

crimes involve actual or attempted physical contact with a minor, a defendant's

knowledge of the victim's age need not be shown in order to prove the defendant's

guilt." *Id.* (quoting *Kilpatrick v. Commonwealth*, 857 S.E.2d 163, 174 (Va. Ct.

App. 2021), *rev'd on other grounds*, 876 S.E.2d 177 (Va. 2022)).  Because *Settle*'s

interpretation of § 18.2-370(A) was correct, the district court did not err in

instructing the jury on Count 2.

         **a.  The traditional tools of statutory interpretation establish that Virginia Code § 18.2-370(A) does not require proof of the defendant's knowledge of the child's age.**

Based on the plain text of the statute, § 18.2-370(A) does not require that the

defendant knew the child was under the age of 15.  The statute carries two intent

requirements: "with lascivious intent" and "knowingly and intentionally."  Va.

Code § 18.2-370(A).  The most natural reading of the statute is that the adverbial

phrase "knowingly and intentionally" modifies the verb "commits."  Defendant's

interpretation would require that the adverbial phrase "knowingly and intentionally" also modifies the prepositional phrase "with any child under the age of 15 years." The Supreme Court of Virginia has underscored that it is "required to apply the plain meaning of statutes" and is "not free to add language to [a] statute [that] the General Assembly has not seen fit to include." *Dietz v. Commonwealth*, 804 S.E.2d 309, 314 (Va. 2017) (citations and internal quotation marks omitted). Similarly, this Court has consistently rejected interpretations of federal child-exploitation statutes that would extend the adverb "knowingly" beyond the verb it modifies. *See, e.g.*, *United States v. Washington*, 743 F.3d 938, 941 (4th Cir. 2014) (explaining that, under 18 U.S.C. § 2423(a), "the adverb 'knowingly' modifies the verb 'transports' because [a]dverbs generally modify verbs, and the thought that they would typically modify the infinite hereafters of statutory sentences would cause grammarians to recoil" (internal quotation marks omitted)); *see also Banker*, 876 F.3d at 537–39 (concluding that, under § 2422(b), the verb "knowingly" modifies the verbs "persuades, induces, entices, or coerces," not the age of the victim). The same reasoning undermines defendant's interpretation of § 18.2-370(A).

Further, the Virginia General Assembly knows how to require proof of the defendant's knowledge of the victim's age as an element of a sex offense against a child. *See, e.g.*, Va. Code § 18.2-374.3(C) (making it "unlawful for any person 18

36

years of age or older to use a communications system . . . for the purposes of soliciting, with lascivious intent, any person he *knows or has reason to believe* is a child younger than 15 years of age to knowingly and intentionally" engage in certain prohibited acts (emphasis added)).  The Supreme Court of Virginia "presume[s] that the General Assembly chose, with care, the words that appear in a statute" and "that, in choosing the words of the statute, the General Assembly acted with full knowledge of the law in the area in which it dealt." *Turner v. Commonwealth*, 809 S.E.2d 679, 681 (Va. 2018) (internal quotation marks omitted).  If the General Assembly intended for § 18.2-370(A) to require proof that the defendant knew or reasonably believed the child was under the age of 15, it could have included language like that of § 18.2-374.3(C), but it did not.  *Cf. Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest."); *Turner*, 809 S.E.2d at 682 ("We have repeatedly stated that when the General Assembly uses two different terms in the same act, it is presumed to mean two different things."  (internal quotation marks omitted)).

Consistent with the text of the statute, the Virginia Model Jury Instructions for § 18.2-370 do not require the Commonwealth to prove beyond a reasonable

doubt that the defendant knew the child was under the age of 15. *See* Va. Model Jury Instructions Crim. No. 29.300 (Sept. 2023). Thus, the traditional tools of statutory interpretation establish that the defendant's knowledge of the victim's age is not a required element for a conviction under § 18.2-370(A). *Cf. Rainey v. Commonwealth*, 193 S.E. 501, 502 (Va. 1937) (concluding that, because "the statute [did] not require that the accused must possess knowledge of the victim's age when the sexual act takes place," such knowledge was not an element of Virginia attempted statutory rape). Therefore, the district court did not err in failing to instruct the jury that it must find defendant knew MV was under the age of 15 to sustain a conviction on Count 2.

### b. Defendant's counterarguments are unavailing.

Defendant offers two reasons why the Court should interpret § 18.2-370(A) to require proof that he knew MV was under the age of 15. Neither argument has merit.

First, defendant contends that knowledge of the child's age is an element because indecent liberties with children is a non-contact offense. Def. Br. 13–14, 17. He relies primarily on the Virginia Court of Appeals' statement in *Kilpatrick* that "[u]nder Virginia law, where sexual crimes involve actual or attempted physical contact with a minor, a defendant's knowledge of the victim's age need not be shown in order to prove the defendant's guilt." 857 S.E.2d at 174. But

*Kilpatrick* did not interpret the text of § 18.2-370.  Instead, the question presented in that case was whether expert profile evidence is admissible where a defendant is charged with computer solicitation of a minor under § 18.2-374.3(C).  *Id.* at 171.  "Unlike most sex crimes in Virginia involving victims who are minors," the Court of Appeals observed, § 18.2-374.3 "expressly conditions a defendant's guilt on his knowledge of the victim's age."  *Id.*  "By testifying that appellant did not meet the diagnostic criteria of a pedophile," the proffered expert "would have provided information that would be relevant to understanding appellant's belief as to [the victim's] age at the time of the alleged offenses."  *Id.* at 172.  Therefore, "the trial court erred in excluding [the expert's] testimony on the basis that it would have been expert opinion on an ultimate issue."  *Id.* at 171.

The Court of Appeals distinguished other decisions that had "rejected the introduction of profile evidence in the context of sex crimes" because they involved charges of "varying forms of sexual assault, sexual battery, or rape."  *Id.* at 174.  "Unlike" § 18.2-374.3(C), "those crimes involved actual or attempted physical contact with a minor."  *Id.*  In such cases, "the only conceivable purpose" for expert profile testimony would be to offer character evidence showing that "the defendant acted in conformity with that character trait on a particular occasion."  *Id.* at 175.  Thus, *Kilpatrick*'s analysis of the admissibility of expert profile testimony under § 18.2-374.3(C) did not set forth any test for determining whether

a sex crime involving a minor requires proof of the defendant's knowledge of the victim's age.

Defendant further relies on Virginia case law emphasizing that "the gravamen" of the indecent liberties offense "is the *proposal or encouragement* to a child, under the age of fourteen to expose his or her sexual parts." *Sandoval v. Commonwealth*, 768 S.E.2d 709, 719 (Va. Ct. App. 2015); *see also Hix v. Commonwealth*, 619 S.E.2d 80, 87 (Va. 2005) (stating, on appeal from a conviction for attempted indecent liberties with a minor, that "[t]he completed crime of attempt does not require any sexual touching of or by the victim, nor need the victim agree to perform any of the acts. The simple act of proposing or inviting constitutes the completed crime if the offender is over the age of 18, the act is done with lascivious intent and the victim is under the age of 14.").[4]

But this Court has discerned a similar purpose in § 2422(b), which "criminalizes an intentional attempt to achieve a *mental* state—a minor's assent—regardless of the accused's intentions [concerning] the actual consummation of sexual activities with the minor." *United States v. Engle*, 676 F.3d 405, 419 (4th Cir. 2012) (internal quotation marks omitted). Thus, § 2422(b) "was designed to

---

[4] Although *Hix* and *Sandoval* both reference a child under the age of 14, defendant does not dispute that § 18.2-370(A) applies to an act "with any child under the age of 15 years."

protect children from the act of solicitation itself." *Id.* (internal quotation marks omitted). Nevertheless, this Court has squarely rejected a knowledge-of-age requirement under § 2422(b), reasoning, in part, that this interpretation "honor[s] the congressional goal inherent in the [Act]" and "aims to protect minors—not make conviction more difficult for crimes that affect them." *Banker*, 876 F.3d at 540 (quoting *United States v. Daniels*, 685 F.3d 1237, 1250 (11th Cir. 2012) (per curiam)). Likewise, reading an additional intent requirement into § 18.2-370(A) would thwart the Virginia General Assembly's goal of protecting children from indecent liberties. *Cf. Washington*, 743 F.3d at 943 (rejecting a knowledge-of-age requirement under § 2423(a) because "[i]mposing such a mens rea requirement would be tantamount to permitting adults to prey upon minors so long as they cultivate ignorance of their victims' age" (internal quotation marks omitted)).

Second, defendant contends that, because § 18.2-370(A)(1) criminalizes "propos[ing] that" a child "expose his or her sexual or genital parts" and, because solicitation is similar to an attempt, Count 2 should carry the same intent requirement as the attempted coercion and enticement offense in Count 3. Def. Br. 14–15, 17. But Count 2 charged defendant with a *completed* offense under § 2422(b) of coercing and enticing MV "to engage in sexual activity for which a person can be charged with a criminal offense," specifically, the *completed* offense of taking indecent liberties with children, in violation of § 18.2-370. JA20.

41

Defendant has not cited, nor has the government located, any Virginia case law characterizing a completed offense under § 18.2-370(A) as purely a solicitation offense.

Instead, the Virginia General Assembly has expressly proscribed the solicitation of minors in other code provisions. *See, e.g.*, Va. Code § 18.2-29 ("Any person age eighteen or older who commands, entreats, or otherwise attempts to persuade another person under age eighteen to commit a felony other than murder, shall be guilty of a Class 5 felony."); Va. Code § 18.2-374.3(C) (prohibiting "any person 18 years of age or older" from "us[ing] a communications system . . . for the purposes of soliciting, with lascivious intent, any person he knows or has reason to believe is a child younger than 15 years of age"). Thus, defendant's effort to frame Count 2 as an inchoate offense lacks merit.

In any event, this Court has never held that a conviction for an attempted violation of § 2422(b) requires proof that the defendant knew the age of the victim. In determining that Count 3 required proof that defendant knew or reasonably believed that MV was 13 or older but under the age of 15, the district court relied on the decisions in *United States v. Coté*, 504 F.3d 682, 688 (7th Cir. 2007), *United States v. Farley*, 607 F.3d 1294, 1333–34 (11th Cir. 2010), and *United States v.*

42

*Hicks*, 457 F.3d 838, 841 (8th Cir. 2006). JA849–850.[5] In *Banker*, this Court

rejected *Coté* as "not binding" and "not persuasive," reasoning that it predated the

Supreme Court's decision in *Flores-Figueroa v. United States*, 556 U.S. 646

(2009), and "its discussion of when the scienter element properly extends beyond

the verbs to the direct object as well." 876 F.3d at 539. Likewise, the Eighth

Circuit's decision in *Hicks* predated *Flores-Figueroa*, and the Eleventh Circuit's

decision in *Farley* did not address *Flores-Figueroa*. But in *Daniels*, the Eleventh

Circuit considered *Flores-Figueroa* and squarely held that § 2422(b) "does not

require that the government prove that a defendant knew his victim was under the

age of eighteen in order to convict." 685 F.3d at 1248. This Court cited *Daniels*,

not *Farley*, with approval in *Banker*. *See* 876 F.3d at 540.

Moreover, *Banker* correctly observed that *Coté* "involved [a] constitutional

challenge[] to § 2422(b)'s *attempt* offense where the defendant had been

communicating with an adult posing as a minor." *Id.* at 539. Similarly, *Hicks*

reversed the district court's dismissal of the indictment alleging an attempted

violation of § 2422(b) where the defendant had been communicating with a law

enforcement agent posing as a minor. 457 F.3d at 841. And *Farley* held that

---

[5] The government does not concede that the district court correctly instructed the jury on the elements of Count 3. But because the jury acquitted defendant of that charge, this issue is not presently before the Court.

sufficient evidence supported the defendant's conviction for attempting to entice a

minor under § 2422(b) where the defendant had been communicating with an

investigator posing as the mother of a minor.  *See* 607 F.3d at 1333–34.  None of

these decisions is comparable to the present "challenge[] to the completed offense

involving an actual minor victim." *Banker*, 876 F.3d at 539.  Therefore, even if the

Court concludes that Count 2 shares certain characteristics with inchoate offenses,

there is no basis to impose a knowledge-of-age requirement.

In sum, because neither § 2422(b) nor § 18.2-370(A) requires proof of the

defendant's knowledge of the child's age, the district court did not err in

instructing the jury on the elements of Count 2.

### 2.    Any error is not plain.

Second, any error in the instructions on Count 2 is not plain.  A plain error

must be "'clear' or 'obvious.'" *Miller*, 41 F.4th at 311 (quoting *Olano*, 507 U.S. at

734).  "An error is plain if the settled law of the Supreme Court or this circuit

establishes that an error has occurred." *United States v. Carthorne*, 726 F.3d 503,

516 (4th Cir. 2013) (internal quotation marks omitted).  As detailed *supra*, no

Virginia state court has directly addressed whether § 18.2-370(A) requires proof of

the defendant's knowledge that the child was under the age of 15.  This Court's

only decision addressing the issue rejected such a requirement.  *See Settle*, 24 F.4th

at 942.  Therefore, any error in the district court's instructions on Count 2 is not

44

plain.

### 3.    Any plain error did not affect defendant's substantial rights.

Third, any plain error in the instructions on Count 2 did not affect defendant's substantial rights. "A plain error normally affects a defendant's substantial rights if the error was prejudicial, meaning that it 'affected the outcome of the district court proceedings.'" *United States v. Hardy*, 999 F.3d 250, 254 (4th Cir. 2021) (quoting *Olano*, 507 U.S. at 734). Defendant "has the burden of showing that, if the District Court had correctly instructed the jury on the *mens rea* element of [Count 2], there is a reasonable probability that he would have been acquitted." *Greer*, 141 S. Ct. at 2097 (internal quotation marks omitted). Defendant has not made that showing here.

The testimony of MV's father established, and defendant does not contest, that MV was actually 14 years old at the time of the incident. *See* JA373 (stating that MV's date of birth was in 2006); JA399 (district court clarifying that that both the 2006 birth date listed on the vaccination card and the 2007 birth date listed on the American ID card indicated that MV was under the age of 15 at the time of this offense). Although defendant argues there is no evidence that he "knew that MV was less than 15 years old," Def. Br. 18, an instruction consistent with the charge on Count 3 would have required the jury to find that defendant "knew or reasonably believed" MV to be under the age of 15, JA880. The jury heard ample

45

evidence satisfying that standard.

Four individuals who observed MV at the time of the incident all testified consistently that she looked like she was under the age of 15. *See* JA255 (Lieutenant Cliff testified that MV "was definitely younger" and estimated that she was "somewhere in the mid teens" because "[s]he had acne on her face, which was consistent with a teenager."); JA286 (Corporal Fonseca observed that MV was in her "[y]ounger teenage years, 13, 14, maybe 15."); JA298 (Officer Cardon estimated that MV was "anywhere from probably 12 to 14 years old."); JA327 (Agent Harrif observed that MV was about 14 years old.). Similarly, Andrea Haick, a forensic nurse examiner who had completed 238 sexual assault exams, JA403, examined MV on the night of November 8, 2021, and testified that MV's breasts were consistent with those of a patient between the ages of 11 and 14, JA411. The jury also saw photos of how MV looked at the time of the offense. *See, e.g.*, JA919.

There was also circumstantial evidence tending to show that defendant knew or reasonably believed MV was under the age of 15. *See United States v. Fall*, 955 F.3d 363, 376 (4th Cir. 2020) ("In criminal trials, a defendant's knowledge 'will be provable (as knowledge must almost always be proved) by circumstantial evidence.'" (quoting *United States v. Santos*, 553 U.S. 507, 521 (2008)). For example, MV had to use her father's phone to talk to defendant. JA473. She

46

characterized defendant's discussion of sex as "bad talks." JA474. During the encounter on November 7, 2021, defendant told MV that, "if anyone asks," she should "tell them that [he] was [] trying to give [her] advice" and "guide [her] as an older person." JA480. A forensic examination of defendant's phone revealed the sexually explicit video of MV in the active files of the password-protected Gallery Vault application on his phone. JA607, JA611. Officers also found screenshots of defendant's video calls with MV in the cache directory of this application. JA595–596, JA610–611. That defendant stored this video and these images in an application which "require[d] an additional PIN code" to access, JA590, and that the images appeared to have been deleted from his active files, JA597, JA610, reinforces that he knew or reasonably believed MV was under the age of 15.

Defendant suggests that, because the jury acquitted him of Count 3, the Court can infer that the jury also would have acquitted him of Count 2 if it had been properly instructed. Def. Br. 19. That argument presumes that the jury necessarily acquitted him of Count 3 because it did not find beyond a reasonable doubt that he "knew or reasonably believed MV to be 13 years old or older, but younger than 15 years." JA880 (jury instructions on Count 3). But Count 3 charged defendant with attempting to coerce and entice MV to engage in conduct that would violate § 18.2-63, proscribing carnal knowledge of a child between

47

thirteen and fifteen years of age, JA21, whereas Count 2 charged defendant with coercing and enticing MV to engage in conduct that would violate § 18.2-370, proscribing indecent liberties with children, JA20.  Carnal knowledge "includes the acts of sexual intercourse, cunnilingus, fellatio, anilingus, anal intercourse, and animate and inanimate object sexual penetration."  Va. Code § 18.2-63(C).  "A common element in each act, whether intercourse or sodomy, is that the Commonwealth has the burden to prove beyond a reasonable doubt that penetration, however slight, has occurred."  *Welch v. Commonwealth*, 628 S.E.2d 340, 343 (Va. 2006).

Thus, the jury could have acquitted defendant on Count 3 because it did not find beyond a reasonable doubt that he had the specific intent to coerce and entice MV to engage in an act constituting carnal knowledge or that he took a substantial step toward that offense.  Whatever the basis for the verdict on Count 3, it does not establish that any error in the instruction on Count 2 affected defendant's substantial rights.  *Cf. United States v. Arrington*, 719 F.2d 701, 705 (4th Cir. 1983) (rejecting the defendant's argument that, "since the jury acquitted him of conspiracy, it could not have believed [a coconspirator's] testimony concerning his knowledge, and therefore his conviction of aiding and abetting cannot stand" because "[t]here were several obviously differing elements of proof necessary for conviction" under each count).

### 4.     The Court should decline to notice any plain error.

Finally, even if defendant could demonstrate that any plain error affected his substantial rights, the Court should "decline to notice it here." *United States v. Reid*, 523 F.3d 310, 316 (4th Cir. 2008). "Plain error review exists to correct only the most grievous of unnoticed errors." *United States v. Robinson*, 627 F.3d 941, 956 (4th Cir. 2010). The Court's "discretion to notice plain error is appropriately exercised only when failure to do so would result in a miscarriage of justice, such as when the defendant is actually innocent or the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Reid*, 523 F.3d at 316 (internal quotation marks omitted). "[V]iewing the record as a whole, the proceedings" in this case "resulted in a fair and reliable determination" of defendant's guilt. *United States v. Cedelle*, 89 F.3d 181, 186 (4th Cir. 1996) (declining to notice the district court's plain error in failing to instruct the jury that it must find that the defendant "knew the materials depicted persons under the age of 18 engaged in sexually explicit conduct"). As detailed *supra*, multiple witnesses testified that MV appeared to be under the age of 15 at the time of the offense, and there is no evidence that defendant believed her to be 15 or older. Therefore, the Court should decline to correct any error in the instructions on Count 2.

49

## Conclusion

The Court should affirm the judgment of the district court.

Respectfully submitted,

Jessica D. Aber
United States Attorney

_____ /s/

Jacqueline R. Bechara
Assistant United States Attorney

## Statement Regarding Oral Argument

The United States respectfully suggests that oral argument is not necessary in this case. The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

## Certificate of Compliance

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 2016.

I further certify that this brief does not exceed 13,000 words (and is specifically 12,195 words) as counted by Microsoft Word, excluding the table of contents, table of authorities, signature block, statement regarding oral argument, this certificate, the certificate of service, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

                                                    /s/
                              _____
                              Jacqueline R. Bechara
                              Assistant United States Attorney